UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN LEWIS,<br><br>                                          Plaintiff,<br><br>v.<br><br>M. WAGNER,<br><br>                                          Defendant. | Case No.:  14cv2264 WQH (BGS)<br><br>**REPORT & RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: GRANT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF No.  15.]** |

## I.  INTRODUCTION

Plaintiff Brian Deverick Lewis, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a Complaint on September 23, 2014, pursuant to 42 U.S.C. §1983 against Defendant M. Wagner.   (ECF No. 1.)  Plaintiff's Complaint alleges Defendant retaliated against Plaintiff for the Plaintiff's submission of a CDCR 602 complaint[1] against

---

[1] California Department of Corrections and Rehabilitation (CDCR) CDCR 602 allows an inmate/parolee to appeal any CDCR decision, action, condition, policy or regulation that has a material adverse effect upon his or her welfare and for which there is no other prescribed method of departmental review/remedy available. (Cal. Code. Regs. tit. 15, § 3084.1 (2016).)

Defendant for disrespectful and unprofessional conduct. (Id. at ¶ 54.)

On October 13, 2015, Defendant filed a motion for summary judgment. (ECF No. 15.)  Plaintiff filed a response in opposition on February 17, 2016.  (ECF. No. 28.)  In the opposition brief, Plaintiff requested the court "issue summary judgment in his favor" (Id. at 2).  Defendant filed a response to Plaintiff's opposition on March 16, 2016. (ECF. No. 29.)

This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation ("R&R").  For the reasons set forth below, the Court **RECOMMENDS** that Defendant Wagner's motion for summary judgment be **GRANTED.**

## II. BACKGROUND

Plaintiff's Complaint under the Civil Rights Act 42 U.S.C. § 1983 alleges that Defendant, a correctional officer at the Richard J. Donovan Correctional Facility ("RJD"), violated his right to be free from retaliatory punishment for engaging in conduct protected by the First Amendment. (ECF No. 1 at 3.)

Specifically, Plaintiff alleges that on February 22, 2014, Defendant M. Wagner, a correctional officer, was hostile and disrespectful to him when attempting to move him from the upper tier of Building One of his facility.  Plaintiff contends he had approved access due to his position as the "building 1 Mens Advisory Council representative".  (Id. at 3.)  Plaintiff alleges he told Defendant Wagner that he would write a complaint against him for his disrespect to which Defendant allegedly responded "'and then you're going to be my next cell search, what cell are you in?'" (Id. at 3-4.)  Plaintiff alleges that when he responded with his cell number, Defendant took out his notebook and began to write in it. (Id.)

Plaintiff alleges that later in the day on February 22, 2014, he submitted a CDCR 602 against Defendant for disrespectful and unprofessional conduct and noted that Defendant had threatened to search Plaintiff's cell.  (Id.)  Plaintiff alleges the CDCR 602 was incorrectly rejected by the correctional facility because he did not attach the correct

form.  (Id.)

Plaintiff alleges on March 29, 2014, Defendant disciplined him in a retaliatory manner by searching his cell and confiscating his personal property for exercising his First Amendment right of submitting a CDCR 602 against Defendant.  (Id. at 4-5.) Plaintiff alleges that at 7:15 a.m., Defendant left his post to search Plaintiff's cell and confiscated property rightfully belonging to Plaintiff and his cellmate.  (Id. at 5.) Plaintiff contends that he and his cellmate submitted the necessary paperwork, a CDCR 22[2], to regain possession of the confiscated property, but that Defendant tore the form up in Plaintiff's face.  (Id. at 6-7.)  Plaintiff contends it is common place for correctional officers to search cells and confiscate property in retaliation after a problem with an inmate because it can result in argument or violence between cellmates. (Id. at 5.)

Plaintiff alleges on April 3, 2014, Defendant falsified Plaintiff's response to the CDCR 22 by falsely stating Plaintiff's medical device was not approved and that it was Plaintiff who had torn up the CDCR 22. (Id. at 7.)   Plaintiff alleges that the same day, Defendant responded to Plaintiff's cellmates CDCR 22 and falsely stated Plaintiff's cellmate had not shown Defendant his CDCR 1083 property slip.  (Id.)  The confiscated property was returned to Plaintiff and his cellmate within a couple of hours that same day. (Id.)

Additionally, Plaintiff alleges that on April 15, 2014, he attempted to submit a CDCR 602 against Defendant for his conduct but his request was denied by CDCR, even though Defendant had violated departmental policy.  (Id. at 7-8.)

In the instant lawsuit, Defendant Wagner has been sued in his individual capacity for violations of Plaintiff's First Amendment, Eighth Amendment, and Fourteenth Amendment rights.  (Id. at 2, 8.)

---

[2] California Department of Corrections and Rehabilitation (CDCR) Form 22 permits inmates and parolees to request interviews with staff and/or request items and services via a written request process. Department staff shall attempt to resolve inmate and parolee issues expeditiously. (Cal. Code Regs. tit. 15, § 3086 (2016).)

### III. PROFFERED EVIDENCE

**A. Defendant's Proffer**

Defendant argues Plaintiff's retaliation claim is unfounded because the cell search was a mandatory, routine search of Plaintiff's cell in which private property was detained while an investigation into the right to possess the items was conducted.  In support of Defendant's argument, he has proffered the following evidence:

(1)     Plaintiff is a state inmate at RJD.  (Wagner Decl. at ¶ 3.)

(2)     Defendant worked at the RJD in February and March of 2014 during the events that are the subject of this lawsuit.  (Wagner Decl. at ¶ 2.)

(3)     On February 22, 2014, while performing a security check of Building 1, Defendant observed Plaintiff standing in the upper tier, where inmates are prohibited from loitering for safety reasons and instructed Plaintiff to leave the upper tier twice before giving Plaintiff a direct order to "take it to the lower tier." (Wagner Decl. at ¶ 5.)

(4)     Defendant chose not to write Plaintiff up or issue a formal rules violation for the violation of prison rules because Defendant believed Plaintiff was "properly verbally counseled for the incident." (Wagner Decl. at ¶ 6.)

(5)     California Department of Corrections and Rehabilitation ("CDCR") policy requires that officers conduct routine daily cell searches and search at least three cells while working in a housing unit during second watch, which is from 6:00 a.m. to 2:00 p.m.  (Wagner Decl. at ¶ 7.)

(6)     These cell searches are recorded in a Cell Search Log and in the Housing Unit Log Book.  (ECF No. 15-1, at 3 cites to Wagner Decl. ¶ 7, Ex. A & B.)

(7)     Cell searches are typically performed in non-sequential order in order to prevent inmates from predicting which cells will be searched and the searches are recorded in a Cell Search Log and in the Housing Unit Log Book.  (Wagner Decl. at ¶ 7.)

(8)     Cell search logs for Facility A, Building 1 indicate that most cells were searched between one and four times per month in February and March of 2014. (Wagner Decl. at ¶¶ 7-8.)

(9)     Plaintiff's cell (220) was searched once in February 2014.  (Wagner Decl. at ¶ 8; ECF NO. 15-3 at 14.)

(10)     Plaintiff's cell (220) was searched twice in March 2014.  (Wagner Decl. at ¶ 8; ECF NO. 15-3 at 16.)

(11)     After February 22, 2014, Defendant returned to Building 1 once on March 22, 2014 and a second time on March 29, 2014.  (Wagner Decl. at ¶¶ 10-11.)

(12)     On March 29, 2014, Defendant conducted a search of Plaintiff's cell (Wagner Decl. at ¶ 11.)

(13)     Defendant searched Plaintiff's cell five weeks after the alleged threat to search it occurred. (ECF No. 29, at 2; ECF No. 15-1, at 6-8.)

(14)     Defendant did not search Plaintiff's cell in order to retaliate against Plaintiff, but searched Plaintiff's cell as a part of Defendant's required job duty to conduct routine searches of the cells in the building.  (Wagner Decl. at ¶ 11.)

(15)     During the search of Plaintiff's cell, Defendant confiscated two items he believed Plaintiff possessed in violation of prison rules.  Defendant confiscated a fan because it had writing on it and a cervical pillow because it did not appear on the ADA appliance list and, despite Plaintiff's protest, no "medical chrono" was provided to Defendant to show that possession was permitted. (Wagner Decl. at ¶ 12.)

(16)     Due to Plaintiff's protest, Defendant checked the Receiving and Release Department ("R&R Department") regarding the fan and checked the computer system to determine if possession of the pillow was permitted.  Defendant found a property card for the fan but was not able to find the pillow in the computer system.  Defendant spoke with Facility A Sergeant Asbury about the pillow who indicated that the computer system for medical is not always up to date.  Defendant returned both items to Plaintiff on March 29, 2014.  (Wagner Decl. at ¶ 13.)

(17)     Plaintiff completed a CDCR 22 titled "Inmate/Parolee Request for Interview, Item of Service" and gave it to Defendant on March 29, 2014.  Defendant wrote a response to the CDCR 22 detailing the cell search, confiscation, and return of

property to Plaintiff shortly after the cell search.  (Wagner Decl. at ¶ 14; ECF No. 15-3, at 18.)

(18)   Defendant searched Plaintiff's cell once during March 2014. (ECF No. 29, at 2.)

(19)   Plaintiff's property was temporarily removed during the cell search because the property was suspected of violating prison rules. (ECF No. 29, at 2; ECF No. 15-1, at 8.)

(20)   Defendant removed Plaintiff's property to conduct an investigation.  (ECF No. 29, at 2; ECF No. 15-1, at 8.)

(21)   Defendant investigated the items immediately, checking multiple sources and when the property was cleared, it was returned to Plaintiff that same day within a few hours of it being removed from the cell. (ECF No. 29, at 2; ECF No. 15-1, at 8.)

(22)   Regarding the confiscation of the fan, Defendant suspected the fan was in violation of prison rules because of the writing on it, his investigation revealed that the fan did not violate prison rules and Plaintiff was entitled to possession. (ECF No. 29, at 3; Wagner Decl. ¶ 13.)

(23)   Regarding confiscation of the cervical pillow, Defendant removed the pillow for only a few hours, investigated, and then returned it to Plaintiff.  (ECF No. 29, at 3.)

(24)   An officer need not check systems prior to a search to determine a medical appliance's authorization.  (ECF No. 29, at 3.)

(25)   In Plaintiff's opposition, he produced a paper chrono that was undisputedly issued to him. However, Plaintiff was not able to produce this chrono during the search. (ECF No. 29, at 3; Wagner Decl. ¶ 13.)

(26)   As a result of the lack of production of a chrono during the search, Defendant checked the computer for authorization and was unable to find medical authorization for the pillow.  (ECF No. 29, at 3; Wagner Decl. ¶ 13.)

(27)   When Defendant was unable to find the authorization for the pillow, he checked with his Sergeant, who advised him the computer system is not always up to

date. (ECF No. 29, at 3; Wagner Decl. ¶ 13.)

**B. Plaintiff's Proffer**

Plaintiff submitted his declaration supporting his opposition to defendant's motion for summary judgment on February 17, 2016. (ECF No. 28, at 101-107.)  In support of Plaintiff's opposition, he has proffered the following evidence: [3]

(1) Plaintiff submitted CDCR 7410 titled "Comprehensive Accommodation Chrono" completed by G. Casian M.D. on December 9, 2013 and approved on December 10, 2013, which indicates that a wrist brace, an XL back brace, an extra mattress, and a cervical pillow were approved medical devices for Plaintiff's accommodation.  (CDCR 7410, ECF No. 28, at 75.)

(2) Plaintiff submitted CDCR 602 titled "Inmate/Parolee Appeal" dated February 26, 2014 regarding the February 22, 2014 incident.  In the form, Plaintiff reports that he was threatened by Defendant who was disrespectful and belligerent while Plaintiff was waiting for a shower.  Plaintiff reported Defendant told him he would search Plaintiff's cell upon returning to work in retaliation for Plaintiff's complaint.  The form reports Plaintiff's appeal was rejected by RJD staff on February 26, 2014.  (CDCR 602, ECF. No 28, at 20.)

(3) Plaintiff submitted CDCR 22 titled "Inmate/Parolee Request for Interview, Item or Service," which Plaintiff submitted on February 28, 2014, requesting the appeal log number for the appeal of the complaint against Defendant.  On March 5, 2014, Plaintiff requested that Defendant not search Plaintiff's cell as threatened nor disrespect him and Plaintiff would continue to respect Defendant, as Plaintiff

---

[3]  The Court notes Plaintiff also submitted: the RJD Housing Unit 1 Log Book from: March 7, 2014, March 16, 2014, March 18, 2014,  and March 26, 2014 (ECF No. 28, at 25-36); Plaintiff's Objections to Defendants Discovery Responses and Request to Amend and Correct (ECF No. 28, at 38-43); Defendant M. Wagner's Responses to Plaintiff's: Interrogatories (ECF No. 28, at 45-50), Second Set of Interrogatories (ECF No. 28, at 52-57), Requests for Admissions Set #1 (ECF No. 28, at 59-65), Requests for Admissions #2 (ECF No. 28, at 67-73); and a letter from John Walters to Plaintiff dated May 26, 2015 (ECF No. 28, at 96).

did not want any problems. (CDCR 22, ECF No. 28, at 24.)

(4) Plaintiff submitted CDC 695 titled "Screening for CDC 602 Inmate/Parolee Appeals" and dated March 3, 2014, which reported Plaintiff's appeal was rejected because it was missing the necessary supporting CDCR 22 to be submitted to Correctional Officer Wagner. (CDC 695, ECF No. 28, at 22.)

(5) Plaintiff submitted the RJD Housing Unit 1 Log Book dated March 7, 2014, which recorded that cell 220 (Plaintiff's cell) was searched by Officer Meza and Officer Garcia that day.[4] (March 7 Log Book, ECF No. 28, at 26-27.)

(6) Plaintiff submitted the RJD Housing Unit 1 Log Book dated March 16, 2014, which recorded that cell 220 (Plaintiff's cell) was searched by Officer Buenestro and Officer Meza that day.[5] (March 16 Log Book, ECF No. 28, at 29-30.)

(7) Plaintiff submitted the RJD Housing Unit 1 Log Book dated March 18, 2014, which recorded that cell 220 was searched by Officer Bustos and Officer Martinez that day.[6] (March 18 Log Book, ECF No. 28, at 32-33].)

(8) Plaintiff submitted the RJD Housing Unit 1 Log Book dated March 26, 2014, which recorded that cell 220 was searched by Officer Meza and Officer Delgado that day.[7] (March 26 Log Book, ECF No. 28, at 35-36.)

(9) Plaintiff submitted a CDC Form 695 appeal rejection letter from Appeals Coordinators R. Olson and J. Ramirez to Plaintiff, dated May 30, 2014, which reported Plaintiff's appeal had been rejected because a CDCR 22 regarding the

---

[4] The Court notes that Officer Meza and Officer Garcia are not parties to this lawsuit. Correctional Officer Wagner is the only Defendant named in this action. The log does not indicate Defendant searched cell 220 on March 7, 2014.

[5] The Court notes that Officer Buenestro and Officer Meza are not parties to this lawsuit. Correctional Officer Wagner is the only Defendant named in this action. The log does not indicate Defendant searched cell 220 on March 16, 2014.

[6] The Court notes that Officer Bustos and Officer Martinez are not parties to this lawsuit. Correctional Officer Wagner is the only Defendant named in this action. The log does not indicate Defendant searched cell 220 on March 18, 2014.

[7] The Court notes that Officer Meza and Officer Delgado are not parties to this lawsuit. Correctional Officer Wagner is the only Defendant named in this action. The log does not indicate Defendant searched cell 220 on March 26, 2014.

wrist brace and the original cell sheet were required for appeal as supporting documents.  (May 30 CDC 695, ECF No. 28, at 98.)

(10)    Plaintiff submitted a CDCR 22 titled "Inmate/Parolee Request for Interview, Item or Service" and dated June 7, 2014 requesting the original cell search sheet for the March 29, 2014, search of Plaintiff's cell and the "four other cells" searched by Defendant on that date.  (June 7 CDCR 22, ECF No. 28, at 100.)[8]

## IV. STANDARD OF REVIEW

Summary judgment is appropriate when it is demonstrated that there exists no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);  Adickes v. SH. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). Thus, a motion for summary judgment under Fed. R. Civ. P. 56 addresses the sufficiency of the evidence, or of the law, to support the plaintiff's claims.  Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and discovery that demonstrates an absence of genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return the verdict for a non-moving party.  Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other

---

[8] The Court notes Plaintiff submitted additional discovery requests for and responses to: Plaintiff's Interrogatories; Plaintiff's Requests for Admissions; and Plaintiff's Requests for Production of Documents.

than for the movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim.  Id.; Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion."  Nissan Fire & Marine, 210 F.3d at 1102.  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.

The party opposing a properly supported motion for summary judgment "'may not rest upon mere allegations or denials of his pleading, but … must set forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1030 (9th Cir. 2008); (quoting Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003); Lindahl v. Air Fr., 930 F.2d 1434, 1437 (9th Cir. 1991).  Nevertheless, inferences are not drawn out of the air; rather, it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Juell v. Forest Pharms., Inc., 456 F. Supp. 2d 1141, 1149 (E.D Cal. 2006); UMG Recordings, Inc. v. Sinnott Forest Pharms., Inc., 300 F. Supp 2d 993, 997 (E.D. Cal. 2004) (quoting Richards v. Nielsen Freight Lines, 602 F. Supp 1224, 1244-45 (E.D Cal. 1985), aff'd 810 F.2d 898 (9th Cir. 1987)).

"A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del

Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative." Anderson, 477 U.S. at 249; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). Similarly, self-serving declarations, uncorroborated by other testimony or other persuasive evidence, cannot create a genuine issue of fact sufficient to defeat summary judgment. Villiarimo c. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

While a court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, a court is not required to examine the entire file for establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). After discovery, if the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. See Nissan Fire & Marine, 210 F.3d at 1103.

## V. DISCUSSION

### A.    First Amendment

#### 1.  Party Arguments

As to Plaintiff's retaliation claim under the First Amendment, Defendant Wagner argues there was no retaliatory motive and there is no evidence of retaliation in fact. (ECF No. 29, at 2; ECF No. 15-1, at 6-8.) Defendant also argues there was no causation between the adverse action (alleged retaliatory cell search) and protected conduct (submission of CDCR 602 complaint) as required by the First Amendment and Defendant's actions reasonably advanced the legitimate correctional goal of safety and security. (ECF No. 15-1, at 6.)

In opposition, Plaintiff argues that Defendant conducted a cell search in retaliation to a CDCR 602 complaint that Plaintiff submitted in response to an encounter between

Plaintiff and Defendant that occurred on February 22, 2014.  Additionally, Plaintiff argues the cell search conducted by Defendant on March 29, 2014, constituted the sixth search of Plaintiff's cell in the month of March, which was "well-outside the range of 'one and four times per month' and therefore, not a required job duty of Defendant. (ECF No. 28, at 6.)

### a.  Standard of Review

A viable claim of First Amendment retaliation contains five basic elements: (1) an assertion that a state actor took some adverse action against an inmate, (2) because of, (3) that inmate's protected conduct, and that action (4) chilled the inmate's exercise of his First Amendment Rights, and (5) the action did not reasonably advance a legitimate correctional goal.  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005.)

The plaintiff must submit evidence that links the alleged retaliation with the exercise of a First Amendment right.  Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995.) More specifically, the plaintiff must show the exercise of the First Amendment right was the substantial or motivating factor behind the defendant's conduct.  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989).  Raising a genuine issue of material fact as to retaliatory motive requires the plaintiff to produce "in addition to evidence that the defendant knew of the protected speech, at least (1) evidence of proximity in time between the protected speech and the allegedly retaliatory decision, (2) evidence that the defendant expressed opposition to the speech or (3) evidence that the defendant's proffered reason for the adverse action was false or pretextual." Pinard v. Clatskanie School Dist. 6J, 467 F.3d 755, 771 n.21 (9th Cir. 2006).

### b.  Discussion

Here, the evidence demonstrates elements one and three have been met.   As to element one, there has been an assertion that Defendant Wagner took an adverse action against Plaintiff, namely an unwarranted cell search on March 29th and the subsequent temporary confiscation of Plaintiff's property.  Defendant acknowledges that if a cell search is found to be retaliatory, it will constitute an adverse action. (ECF No. 15-1, at 6.)

As to element three, protected conduct, it is clear the First Amendment protected conduct at issue is Plaintiff's submission of a CDCR 602 complaint against Defendant Wagner.

With respect to element two, causation, Plaintiff argues that but for the submission of the CDCR 602 complaint, Defendant would not have conducted the March 29th cell search.  In response, Defendant contends the cell was searched in furtherance of a legitimate correctional goal, an argument that implicates element five.  Therefore, the Court will discuss element two -"causation" and element five - "the action did not reasonably advance a legitimate correctional goal" together in order to avoid redundancy.

As stated above, the parties dispute whether the submission of the CDCR 602 regarding the February 22nd encounter between Plaintiff and Defendant caused the allegedly retaliatory cell search. Where Plaintiff reported in the CDCR 602 that Defendant told him he would search Plaintiff's cell upon returning to work, Defendant has put forth evidence that the cell search was not conducted in retaliation, but as a part of Defendant's required duty to conduct mandatory routine cell searches.  Defendant has submitted evidence that he searched the cell as part of his duty to conduct routine searches of the cells in the building.  As previously stated in the Court's review of the facts, officers who are assigned to a housing unit conduct routine daily cell searches and CDCR policy requires that officers working in a housing unit during second watch search at least three cells during the watch. Cell-search frequency is an average – not a limit. (ECF No. 29, at 2.)  Therefore, the evidence demonstrates Defendant's cell search constituted an action advancing a legitimate correctional goal.

Defendant has also submitted evidence that cell searches are recorded in a Cell Search Log and in the Housing Unit Log Book, which indicate that most cells were typically searched between one and four times per month during February and March. There is no evidence of retaliation because Defendant would have had to engage in a cell search even in the absence of Plaintiff's CDCR 602 complaint. Plaintiff has failed to submit evidence that the actions taken by Defendant lacked a legitimate correctional goal.

Plaintiff must also submit evidence of causation; a link between the alleged retaliation and the exercise of a First Amendment right.  Specifically, the plaintiff's speech must be the motivating factor behind the retaliatory conduct.  Pratt, 65 F.3d at 807.  The Ninth Circuit has held that raising a genuine issue of material fact as to retaliatory motive requires the plaintiff to prove evidence of proximity between the speech and retaliation, opposition to the speech and a pretextual reason for the retaliatory conduct.  Pinard, 467 F.3d at 771 n.21.  First, proximity in time between the exercise of the First Amendment right and the alleged retaliation can serve as evidence that the adverse action constituted retaliatory conduct.  Defendant has submitted evidence that after the encounter on February 22nd and submission of a CDCR 602 on February 26th, Defendant first returned to housing unit 1 on March 22, 2014, and Plaintiff's cell was not one of the five cells defendant searched that day.  In fact, the next time Defendant was assigned to housing unit 1 was on March 29, 2014, which was more than a month after his incident with Plaintiff and Plaintiff's cell was one of five cells searched by Defendant that day.  Plaintiff admits that Defendant did not search Plaintiff's cell the first day he was assigned to housing unit 1 as allegedly threatened, but notes Defendant did search Plaintiff's cell the second time he was assigned to housing unit 1.  Plaintiff has not submitted sufficient evidence of proximity in time between the incident or the submission of the CDCR 602 in February and the alleged retaliatory cell search, which occurred a little more than a month later on March 29, 2014.

Evidence that Defendant expressed opposition to the speech may demonstrate a link between the exercise of Plaintiff's First Amendment right and the alleged retaliation.  Plaintiff has alleged that after their verbal altercation on February 22, 2014 and in response to letting Defendant know he was going to submit a CDCR 602, Defendant stated "and then your going to be my next cell search, what cell are you in?"  Plaintiff alleges that he informed Defendant of his cell number and Defendant proceeded to take "out a small notebook and began to write in it" (ECF No. 1, at 3-4.)  However, as noted above, Plaintiff has admitted that Defendant Wagner's next cell search was not of Plaintiff's cell.  Evidence also demonstrates that Defendant Wagner wrote a response to

Plaintiff's complaint about the cell search and after confirming Plaintiff had authorization to have a fan and cervical pillow, Defendant Wagner returned the confiscated items on the very same day the search was conducted.  Accordingly, Plaintiff has not submitted evidence of opposition to his protected speech.

Finally, evidence that Defendant's proffered reason for the adverse action was false or pretextual may demonstrate a link between the alleged relation and exercise of Plaintiff's First Amendment right.  As previously stated above, Defendant has presented evidence that correctional officers are required to conduct mandatory, routine cell searches for safety purposes, which demonstrates Defendant Wagner had a legitimate correctional purpose for searching Plaintiff's cell.

While the parties do not address the fourth element of a First Amendment claim - chilling of Plaintiff's exercise of his First Amendment rights - the evidence demonstrates Plaintiff continued to submit a number of forms both before and after the March 29, 2014, cell search.  Therefore, it does not appear that Plaintiff's exercise of his First Amendment rights were chilled by the threat of a search or the search itself.[9] Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment as to Plaintiff's First Amendment claim.

### 2.  Eighth Amendment

#### a.  Party Argument

Defendant argues there was no retaliation and the temporary deprivation of personal property is not a constitutional violation.  (ECF No. 29, at 2.)  Defendant further argues Plaintiff's Eighth and Fourteenth Amendment claims are not supported by the law, nor was evidence provided in support of either of the claims.  (ECF No. 29, at 4; ECF No. 28.)

Although not specifically articulated, Plaintiff appears to argue that his property was improperly confiscated in violation of the Eighth Amendment and that Defendant

---

[9] Specifically the Court notes that Plaintiff submitted a CDCR Form 22 on February 28, 2014 and March 5, 2014 before the search (ECF No. 28, at 6.) Plaintiff admits to submitting the CDCR 602 three times to the second level (ECF No. 1, at 6.) and a CDCR Form 22 on June 7, 2014 (ECF No. 28, at 100.)

unreasonably used a cell search to gain access to, and deprive plaintiff of, his personal property and cause Plaintiff harm in retaliation of a CDCR 602 submission.[10] (ECF No. 1, at 8.)

### b. Eighth Amendment Standard of Review

The Eighth Amendment prohibits cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976); see Spain v. Procunier, 600 F.2d 189, 200 (9th Cir. 1979).  In the context of incarceration, although "[t]he Constitution 'does not mandate comfortable prisons," the Supreme Court has stated that malicious cell searches and "calculated harassment unrelated to prison needs" may implicate the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Rhodes, 452 U.S. at 349); Hudson v. Palmer, 468 U.S. 517, 52830 (1984).  However, after incarceration, "only the unnecessary and wanton infliction of pain … constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Ingraham v. Wright, 430 U.S. 651, at 670 (1977) (quoting Estelle v. Gamble, supra, 429 U.S. 97, at 103 (1976)) (citations omitted).

A viable Eighth Amendment claim that a prison official has deprived an inmate of humane conditions must meet two requirements, one objective and one subjective.  Lopez v. Smith, 203 F.3d 1122, 113-33 (9th Cir. 1995).  Under the objective requirement, the prison official's acts or omissions must deprive an inmate of the minimal civilized measures of life's necessities. Id.

The subjective requirement, relating to defendant's state of mind, requires "deliberate indifference."  Id.  In the context of a prisoner's medical needs, the determination of "deliberate indifference" requires an examination of two elements: (1) the seriousness of the prisoner's medical needs and (2) the nature of the defendant's

---

[10] The court notes that the entirety of Plaintiff's argument regarding the violation of his Eighth Amendment right appears in the second to last sentence of his complaint and is not directly supported by evidence in Plaintiffs opposition.

response.  See McGuckin v. Smith, *974* F.2d 1050, 1059 (9th Cir. 1992) (overruled on other grounds by WMX Techs., Inc. v Miller, 104 F3d 1133 (9th Cir. 1997)).

### c.  Discussion

As noted in the standard of review section above, in order to survive a motion for summary judgment on an Eighth Amendmend claim, plaintiff must demonstrate a triable issue of material fact as to whether he has objectively been deprived of a necessity of life. In Lopez v. Spurgeon, a state prisoner proceeding *pro se,* alleged a correctional officer ransacked and trashed his cell while conducting a cell search in retaliation for the submission of grievances against him.  Lopez v. Spurgeon, No. C 13 0173 RMW(PR), 2015 WL 971704, at *1 (N.D. Cal. Mar. 3, 2015).  The Lopez court found that a destructive, ransacking cell search was not objectively serious enough to violate the Eighth Amendment.  *Id*.  In this case, the evidence similarly demonstrates that Plaintiff was merely inconvenienced by having his fan and pillow removed from his cell for a few hours while Defendant investigated whether those items violated prison rules. Specifically, Defendant has submitted evidence that during the cell search, he confiscated a cervical pillow because it did not appear on the approved ADA appliance list.  Plaintiff was unable to provide Defendant with a medical chrono that demonstrated the permissibility of the pillow during the cell search.  Defendant has also submitted evidence that he checked the prison's computer system, which showed that Plaintiff could possess a brace and an extra mattress.  Plaintiff has not provided any evidence to demonstrate that the temporary confiscation of the fan and cervical pillow caused him pain or the unnecessary deprivation required for an Eighth Amendment claim in the prison context.

As for the subjective prong of an Eighth Amendment inquiry, plaintiff must show there is a triable issue of material fact as to defendant's state of mind, i.e. whether Defendant Wagner was deliberately indifferent to Plaintiff's need for the fan and pillow. Plaintiff states in his opposition that "[p]rior to searching Plaintiff's cell Wagner had no knowledge of what medical appliances Plaintiff was allowed to possess due to the fact

that prior to the search he did not check the computer system to ascertain such." However, the evidence demonstrates Plaintiff was not able to produce his chrono for the March 29th cell search, therefore Defendant Wagner checked the computer after the property was confiscated in order to confirm Plaintiff's need.  Specifically, Defendant has submitted evidence that he went to the Receiving and Releasing Department ("R&R Department") to determine whether Plaintiff possessed the property in violation of prison rules.  After finding a property card for the fan, defendant returned the fan to plaintiff that same day when Defendant's shift ended at 2:00 p.m.   As for the confiscated pillow, Defendant presented evidence that he followed up with Facility A Sergeant Asbury concerning the pillow, who informed Defendant that even though the pillow did not show up as an approved item on the system the computer system is not always up to date. Defendant therefore elected to return the pillow to Plaintiff that same day.  Thus, Defendant's actions do not demonstrate knowledge and disregard of excessive medical risk because Defendant did not know whether Plaintiff was allowed to possess the medical devices, he believed the property was in violation of prison rules, and only temporarily took the property while determining its permissibility.  No triable issue of material fact exists as to the objective or subjective components of Plaintiff's claim. Accordingly, **IT IS RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment on Plaintiff's Eighth Amendment claim.

### 3.  Fourteenth Amendment

#### a.  Party Arguments

First, Defendant argues the availability of a state tort action to Plaintiff precludes relief on his Fourteenth Amendment claim because such actions provide an adequate post-deprivation remedy for the loss of an inmate's property**.**  Second, Defendant argues regardless of whether Plaintiff attempted to redress his loss through other channels, Plaintiff would not be entitled to recover on a Fourteenth Amendment claim because his property was only temporarily confiscated and the temporary deprivation of personal property does not constitute a constitutional violation.  (ECF No. 29, at 2; ECF No. 15-1,

at 8.)

Although not specifically articulated, Plaintiff appears to argue he was deprived of improperly confiscated property in violation of the Fourteenth Amendment.[11]

### b.  Standard of Review

#### i.  Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government action by prohibiting states from depriving people of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. A valid due process claim has three prerequisites: (1) the deprivation, (2) of a liberty or property interest, (3) by officials acting under color of state law. Parratt v. Taylor, 451 U.S. 527, 536–37 (1981).

To prevail on a claim of deprivation of liberty or property without due process of law, a plaintiff must first establish the existence of a protected liberty or property interest. After meeting this threshold requirement, the plaintiff must then demonstrate that the defendants failed to provide the process due. See Wolff v. McDonnell, 418 U.S. 539, at 556–57 (1974); Serrano v. Francis, 345 F.3d 1071, at 1078 (9th Cir. 2003).

However, a temporary deprivation of personal property does not constitute a violation of a prisoner's due process rights unless Plaintiff can show the deprivation imposed "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," causing actual harm to the inmate.  Sandin v. Conner, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

#### ii.  Availability of a State Law Post Deprivation Remedy

Where a prisoner alleges the deprivation of a liberty or property interest in the violation of the Fourteenth Amendment, caused by the unauthorized negligent or

---

[11] The court notes that the entirety of Plaintiff's argument regarding the violation of his Fourteenth Amendment Right appears in the second to last sentence of his complaint and is not supported by evidence in Plaintiffs Opposition.

intentional action of a prison official, the prisoner cannot state a constitutional claim where the state provides an adequate post-deprivation remedy under the Parratt-Hudson Doctrine.  See Parratt v. Taylor, 451 U.S. 527, 359 (1981) (holding that a negligent deprivation of a prison inmate's property by state officials does not violate the Fourteenth Amendment's Due Process Clause if an adequate post remedy exists); see also Hudson v. Palmer, 468 U.S. at 533 (1983) (extending Parratt rule to intentional deprivation); see also Barnett v. Centoni, 31 F.3d 813, 816-17 (per curiam) (9th Cir. 1994) (finding that prisoner had failed to state a due process claim for deprivation of property because "California law provides an adequate post-deprivation remedy for any property deprivations.  See Cal. Gov't Code § § 810-895.").

The Ninth Circuit has held that California law provides an adequate post-deprivation remedy for property deprivations caused by public officials.  Barnett v. Centoni, 31 F.3d 813, 816 (per curiam) (9th Cir. 1994); see Cal. Gov't Code §§810-895 (West 2013).  Under California Government Code §§ 810 et seq., California permits prisoners to seek a post deprivation state judicial remedy for any property deprivations. Cal. Gov't Code §§810-895 (West 2013). It is the existence of the alternative remedies that bars Plaintiff from pursuing a §1983 procedural due process claim, not whether Plaintiff attempted or even succeeded in redressing his loss through the available state remedy process.  Willoughby v. Lewis, 717 F.Supp. 1439, 1443 (D. Nev. 1989).

### c.  Discussion

There is no evidence that Plaintiff pursued the state law remedy available to him under California Government Code § § 810 et seq. before asserting his constitutional claim. Therefore, as a matter of law, Defendant is entitled to summary judgment on Plaintiff's Fourteenth Amendment Claim.

Regardless of availability of the remedy provided by the California Government Code, Plaintiff has not provided evidence that the deprivation he experienced was of such constitutional magnitude that a material issue of fact exists.  Although prisoners have a protected property interest in their personal property, authorized property deprivations are

permissible if conducted pursuant to a regulation that is reasonably related to a legitimate penological interest.  See Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974); Turner v. Safley, 482 U.S. 78, 89, 107 (1987).

As previously noted by the Court, during the March 29th cell search, Defendant confiscated a fan and a cervical pillow that he believed Plaintiff possessed in violation of prison rules.  After referencing the R&R Department concerning the fan, Defendant determined it was a permitted item and returned the fan to Plaintiff within a couple of hours.  After referencing the prison's computer system, which did not list the pillow as a permitted medical accommodation and speaking with Sergeant Asbury who informed Defendant that the computer system isn't always up to date, Defendant returned the pillow to Plaintiff that day.  Both items were returned to Plaintiff on March 29, 2014, shortly after the cell search.  Thus, the evidence shows that the deprivation resulting from the March 29th cell search constituted a temporary deprivation of personal property, which is not a cognizable due process violation. See Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (no due process violation where an inmate's property was taken in connection with his reclassification to a status in which he was not authorized to possess the additional property); Choun v. Woodford, No. C 03 3219 SI, 2005 WL 1910930, at *6-9 (N.D. Cal. Aug. 10, 2005) (concluding that the temporary deprivation of personal property did not violate the prisoner's due process rights); Owens v. Ayers, No. C 01 3720 SI (PR), 2002 WL 73226, at *2 (N.D. Cal. Jan. 15, 2002).  Accordingly, **IT IS RECOMMENDED** that this Court **GRANT** Defendant's motion for summary judgment on the Plaintiff's Fourteenth Amendment claim.

## VI.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge William Q. Hayes under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS RECOMMENDED** that the Court **GRANT** Defendant's motion for summary judgment.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties **no later than June 28, 2016.** The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties **no later than July 12, 2016.**  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  June 7, 2016

Hon. Bernard G. Skomal
United States Magistrate Judge

22

14cv2264 WQH (BGS)